UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MAXCHIEF INVESTMENTS LIMITED,  )
          Plaintiff,  )
  )
v.  )    No. 3:16-cv-63
  )    Judge Phillips
PLASTIC DEVELOPMENT GROUP, LLC,  )
  )
          Defendant.  )

## MEMORANDUM OPINION

Defendant Plastic Development Group, LLC ("PDG") has filed a motion to dismiss this patent infringement action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and/or Fed. R. Civ. P. 12(c) [Doc. 48]. The Court has carefully reviewed the pending motion and related pleadings [Docs. 49, 51, 56].

I.    Background

As previously noted, this case involves plaintiff Maxchief Investments Limited's ("Maxchief") claims of patent infringement as to a plastic bi-fold table manufactured by PDG and sold within the Eastern District of Tennessee. PDG previously filed a motion to transfer this case to the Eastern District of Michigan, where PDG is headquartered, pursuant to 28 U.S.C. § 1404(a).[1] After consideration of the § 1404(a) factors and the then-

---

[1]Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

prevailing interpretation of venue law, the Court concluded that PDG had not shown by a preponderance of the evidence that a transfer was warranted [*see* Docs. 29, 30].

II.     TC Heartland LLC v. Kraft Foods Group Brands LLC

The pending motion arises from the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).  In *TC Heartland*, the Supreme Court considered the question of "where proper venue lies for a patent infringement lawsuit brought against a domestic corporation." *Id*. at 1516.  The Supreme Court noted the statutory direction in 28 U.S.C. § 1400(b), that a patent infringement action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id*.  In a prior decision, the Court held that for purposes of § 1400(b), a domestic corporation "resides" only in the State of incorporation. *Id*. at 1517, 1519 (discussing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226 (1957)). Despite intervening revisions to the general venue statute, 28 U.S.C. § 1391(c), which equated "residence" with personal jurisdiction, the *TC Heartland* Court concluded that "amendments to § 1391 did not modify the meaning of § 1400(b) as interpreted by *Fourco*."[2]  *Id*.  Further, the Court reversed the long-standing Federal Circuit holding that the definition of corporate residence in § 1391(c) was applicable to patent cases under § 1400(b). *Id*. at 1519—1520 (discussing *VE Holding Corp. v. Johnson Gas Appliance Co.*,

---

[2]28 U.S.C. § 1391(c)(2) currently provides that, "[f]or all venue purposes -- an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

2

917 F.2d 1574 (Fed. Cir. 1990)). Accordingly, the Supreme Court unequivocally held that "[a]s applied to domestic corporations, 'reside[nce]' in §1400(b) refers only to the State of incorporation." *Id*. at 1521.

Applying *TC Heartland* to the instant case, PDG first argues that it is not incorporated in this district and it does not have any regular and established place of business in Tennessee [Doc. 49 at pp. 6—7], points which are undisputed. Thus, PDG argues that it does not "reside" in this district and the case should be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

In response, Maxchief argues that PDG has misconstrued the *TC Heartland* case because its holding only applies to domestic corporations and explicitly does not apply to unincorporated associations, including limited liability companies like PDG [Doc. 51 at pp. 2—3 (citing *TC Heartland*, 137 S. Ct. at 1520)]. This is not quite true. The Supreme Court explicitly limited its analysis in *TC Heartland*: "we confine our analysis to the proper venue for corporations" and reserved the applicability of its holding to unincorporated entities. 122 S. Ct. at 1517, n.1.

Maxchief argues that "residence" for unincorporated entities such as PDG means "where it is doing business" [Doc. 51 at pp. 4—5 (citing *Denver & Rio Grande W.R. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 562 (1967))]. However, the cases on which Maxchief relies are interpretations of "residence" under § 1391, rather than § 1400(b). *See, e.g., Douglas v. D.B. Va., LLC*, No. 4:10CV80, 2010 WL 5572830, at *3—4 (E.D. Va. Dec. 13, 2010) (discussing "residence" of LLC under § 1391); *Cal. Clippers, Inc. v. U.S. Soccer Football Ass'n*, 314 F. Supp. 1057 (N.D. Cal. 1970) (discussing "residence" of an

3

unincorporated associated under § 1391). In reply, PDG argues that Maxchief cites no authority for treating unincorporated associations differently for venue purposes in patent cases [Doc. 56 at pp. 3—5].

The Court agrees with PDG on this point. Unincorporated associations, such as limited liability companies, are generally treated like corporations for purposes of venue, whereby the "residence" is the association's principle place of business. *Roberts v. Paulin*, No. 07-CV-13207, 2007 WL 3203969, at *2 (E.D. Mich. Oct. 31, 2007) (citing *Denver & Rio Grande*, 387 U.S. at 559)). Now that the Supreme Court has reinforced that "residence" for corporate defendants in a patent infringement case is limited to the state of incorporation, Maxchief is hard-pressed to present a reason why unincorporated associations should be treated differently. Indeed, the language of § 1400(b) refers to a "defendant" and is not limited only to corporate defendants. Moreover, inasmuch as *TC Heartland* appears to reject the broader personal jurisdiction basis for residence of corporate defendants in patent cases, it seems contrary to allow such a basis for unincorporated entities. Accordingly, the Court agrees, in light of *TC Heartland*, that venue is not proper in this district per 28 U.S.C. § 1400(b).

III. Waiver

However, we are not starting from a clean slate and, as Maxchief notes, a defense of improper venue can be waived [Doc. 51 at pp. 5—7]. PDG contends that it has not waived the venue defense because it was included in PDG's answer to the complaint [Doc. 49. at p. 7 (citing Doc. 16 at pp. 3, 9)]. Maxchief argues that PDG has waived its venue defense because the parties have engaged in "substantial litigation activities" since the

4

Court's ruling on PDG's transfer motion [*Id*.]. PDG argues that the progress of litigation has no bearing on whether venue is proper [Doc. 56 at p. 8].

Citing three post-*TC Heartland* cases, Maxchief further argues that *TC Heartland* is not an intervening *change* in the law, but rather a reaffirmation of the *Fourco* decision [Doc. 51 at pp. 7—9]. These courts have noted that the Supreme Court's *Fourco* decision has been binding since it was issued in 1957, notwithstanding the Federal Circuit's decision in *VE Holding* to the contrary. *See Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15CV21, 2017 WL 2556679, at *3 (E.D. Va. June 7, 2017); *ILife Tech., Inc. v. Nintendo of Am., Inc.*, No. 3:13-cv-04987, 2017 WL 2778006, at *7 (N.D. Tex. June 27, 2017); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618, at *20 (E.D. Tex. June 20, 2017). Thus, Maxchief argues and these cases concur that the prevailing argument in *TC Heartland* was always available.

PDG argues that its improper venue argument was not "available" prior to *TC Heartland* based on the long-standing precedent of *VE Holding* [*Id*. at pp. 5—6], relying on two courts which reach this conclusion [Doc. 56 at pp. 7—8 (citing *Westech Aerosol Corp. v. 3M Co.*, No. C17-5067-RBL, 2017 WL 2671297, at *2 (W.D. Wash. June 21, 2017), and *Stuebing Auto. Mach. Co. v. Gavronsky, et al.*, No. 1:16-cv-576, 2017 WL 3187049 (S.D. Ohio June 12, 2107))]. Since the conclusion of the briefing on this motion, district courts have been split on this issue. *See, e.g.*, *Hand Held Prods., Inc. v. Code Corp.*, No. 2:17-167-RMG, 2017 WL 3085859, at *3 (D.S.C. July 18, 2017) ("[t]he clear trend … is to hold that *TC Heartland* is not an intervening change in the law"); *Tinnus Enter., LLC v. Telebrands Corp.*, No. 6:15-CV-00551-RC, 2017 WL 3084268, at *3 (E.D. Texas July

5, 2017) ("*TC Heartland* does not qualify as an intervening change in law"); *but see The Valspar Corp. v. PPG Indus., Inc.*, No. 16-cv-1429, 2017 WL 3382063, at *4 (D. Minn. Aug. 4, 2017) ("to hold that *Fourco* remained good law at all times over the last twenty-seven years, and thus that PPG should have raised the improper venue defense at the time this case was filed, effectively ignores reality"); *Cutsforth, Inc. v. LEMM Liquidating Co.*, No. 12-cv-1200, 2017 WL 3381816, at *4 (D. Minn. Aug. 4, 2017) (same); *Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-CV-4219-TWT, 2017 WL 3307657, at *3 (N.D. Ga. Aug. 3, 2107) ("*TC Heartland* undoubtedly changed the venue landscape"); *OptoLum, Inc. v. Cree, Inc.*, No. CV-16-03828-PHX-DLR, 2017 WL 3130642, at **3—5 (D. Ariz. July 24, 2017) (collecting cases and agreeing with *Westech*, "*TC Heartland* changed the venue landscape").

Upon careful consideration of the authorities on both sides of the issue, this Court agrees with PDG that *TC Heartland* represents an intervening change in the law such that the defense of improper venue was not available to PDG prior to the Supreme Court's decision in *TC Heartland*. *See GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 374 (6th Cir. 2007) ("[t]he intervening-change-in-law exception to our normal waiver rules … exists to protect those who, despite due diligence, fail to prophesy a reversal of established adverse precedent"). As analyzed in the cases finding the defense was unavailable, the *Fourco* decision considered whether § 1400(b) "is the sole and exclusive provision governing venue in patent infringement actions or whether that section is supplemented by 28 U.S.C. § 1391(c)." 353 U.S. at 222. The Supreme Court concluded that §1400(b) was "not to be supplemented by the provisions of 28 U.S.C. § 1391(c)." *Id.* at 229. As noted in *TC*

6

*Heartland*, § 1400(b) has remained unchanged since the *Fourco* decision, while § 1391(c) has been revised twice. *TC Heartland*, 137 S. Ct. at 1519—20. Following a 1988 revision to § 1391(c) which added the introductory phrase "[f]or purposes of venue under this chapter," the Federal Circuit considered whether the revision was intended to supplement the venue provision in patent cases. *VE Holding*, 917 F.2d at 1579 (describing the phrase as "exact and classic language of incorporation" and questioning, "what … should we conclude that Congress *now* intends by this new language in the venue act"). *VE Holding* did not, and could not, overrule the Supreme Court decision in *Fourco*. Rather, it interpreted a change in the venue statute post-*Fourco*.

For 27 years, the Federal Circuit's interpretation of venue in patent cases has been prevailing and applied by this and countless other courts. *TC Heartland* concluded that *VE Holding*'s application of § 1391(c) to §1400(b) was incorrect. 137 S. Ct. at 1520. The Supreme Court itself described the 1988 and later 2011 amendments to the general venue statute as changes to the venue "landscape" and "new developments." *Id*. at 1519—20. Thus, this Court finds it difficult to describe *TC Heartland* as anything other than a significant change in the law on venue. To do otherwise would ignore the long-standing significance of the *VE Holding* decision and the reliance upon it for many years. *See Ironburg Inventions*, 2017 WL 3307657, at *2 ("*VE Holding* controlled patent venue law for almost thirty years until it was abrogated by *TC Heartland*"); *OptoLum, Inc*., 2017 WL 3130642, at *4 ("[t]o suggest that the defense of improper venue has always been available, and that *TC Heartland* did not effect a change in the law 'because it merely affirms the viability of *Fourco*,' ignores the significant impact of *VE Holding* and the patent bar's

7

reliance on the case for nearly three decades") (citations omitted). In summary, the Court agrees that *TC Heartland* represents an intervening change in the law such that the defense of improper venue was not previously available to PDG.

Moreover, other factors on the question of waiver persuade this Court that PDG has not waived its venue defense. Maxchief contends that the two venue motions should have been consolidated under Fed. R. Civ. P. 12(g)(2).[3] However, the current version of Rule 12(g)(2) limits a party's ability to make multiple motions "*under this rule* raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2) (emphasis added). Defendant's previous motion to transfer was not based on Rule 12, but rather was a motion to transfer to a more convenient venue pursuant to 28 U.S.C. § 1404(a). Although they are similar, a motion to transfer under § 1404 is not a Rule 12(b)(3) motion and is therefore not governed by the waiver provisions of Rule 12(h).[4] *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902 (S.D. Ohio 2013); *Critter Control, Inc. v. Young*, No. 1:13 CV 40, 2013 WL 12085099, at *1 (W.D. Mich. July 12, 2013); *Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06CV01191-ERW, 2007 WL 1223510, at *5 (E.D. Mo. Apr. 24, 2007); *Red Wing Shoe Co. v. B-Jays USA, Inc.*, No. Civ. 02-257DWFAJB, 2002 WL 1398538, at *2 (D. Minn. June 26, 2002); *Blane v. Am. Investors Corp.*, 934 F. Supp. 903, 905—06 (M.D. Tenn.

---

[3] Fed. R. Civ. P. 12(g)(2) states "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

[4] A party may waive a defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2), by failing to raise it by motion under Rule 12, or by failing to include it in a responsive pleading. Fed. R. Civ. P. 12(h)(1).

1996); *James v. Norfolk & W. Ry. Co.*, 430 F. Supp. 1317, 1319 (S.D. Ohio 1976). In the present case, PDG has not filed any previous Rule 12 motions and has included improper venue as one of the affirmative defenses in its answer to the complaint. Accordingly, the Court finds that PDG has not waived the defense of improper venue.

IV.   Remedy

Thus, concluding that venue in this district is improper pursuant to 28 U.S.C. § 1400(b) and that PDG has not waived this defense, the Court must next consider the appropriate remedy. PDG has moved to dismiss the case pursuant to Rule 12(b)(3) or, alternatively, for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) [Doc. 49 at p. 8]. PDG suggests that the Court should dismiss this case because the complaint does not allege venue under the proper standard, § 1400(b), and instead relies on § 1391, which has been rejected by *TC Heartland* [Doc. 56 at p. 3]. Maxchief requests that the Court transfer this case to the Eastern District of Michigan rather than dismiss it [*Id*. at p. 9]. PDG does not dispute that the case could be transferred to a proper venue [Doc. 56 at pp. 8—9].

When venue is improper, "[t]he district court … shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Upon consideration of the previous motion to transfer, the Court has already concluded that this case could have been brought in the Eastern District of Michigan [Doc. 29 at pp. 5—7]. Although the parties have proceeded with litigation since the Court's ruling on the transfer motion, including *Markman* briefings, the case is not so far along that a transfer would frustrate judicial economy. The Court has not issued

any rulings on claim construction and the parties have not yet filed dispositive motions. *Cf. The Chamberlain Group, Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, 2017 WL 3205772, at *2 (N.D. Ill. June 28, 2017) (transfer less than 3 months before trial would not further judicial economy where parties had multiple hearings and conferences with the court and the court had issued rulings on claim construction and summary judgment); *Navico Inc. v. Garmin Int'l*, No. 2:16-CV-190, 2017 WL 2957882, at *2 (E.D. Tex. July 11, 2017) (defendants admitted venue was proper and then challenged venue 2 months prior to trial). Nor does the Court find that PDG unduly delayed filing the instant motion as it was filed approximately one month after *TC Heartland* was decided. Further, the Court notes that dismissal of the case would halt, at least for a time, the parties' progress toward a final resolution of this dispute. Dismissal of this case would likely result in the case being re-filed in the Eastern District of Michigan, where the parties would have to duplicate much of the work that has been done in this district. *See Valspar Corp.*, 2017 WL 3382063, at *5 ("it would serve only to delay the progress of justice to require Valspar to start again at square one"). Accordingly, on balance of the equities and in the interests of justice, the Court finds it more appropriate to transfer this case to the appropriate forum, rather than dismiss it.

Therefore, for all of the foregoing reasons, the defendant's motion to dismiss [Doc. 47] will be granted in part and this case will be transferred to the Eastern District of Michigan for further consideration. An appropriate order will be entered.

                            s/ Thomas W. Phillips
                            SENIOR UNITED STATES DISTRICT JUDGE